**Nos. 22-1163, 22-1180**

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**HOSPITAL MENONITA DE GUAYAMA, INC.**

**Petitioner/Cross-Respondent**

**v.**

**NATIONAL LABOR RELATIONS BOARD**

**Respondent/Cross-Petitioner**

---

**ON REMAND FROM**
**THE SUPREME COURT OF THE UNITED STATES**

---

# PETITION FOR REHEARING EN BANC ON BEHALF OF THE NATIONAL LABOR RELATIONS BOARD

---

**KIRA DELLINGER VOL**
***Supervisory Attorney***

**ERIC WEITZ**
***Attorney***

***National Labor Relations Board***
**1015 Half Street, SE**
**Washington, DC 20570**
**(202) 273-0656**
**(202) 273-3757**

**CRYSTAL S. CAREY**
***General Counsel***
**LYNISA B. MICHALSKI**
***Acting Deputy General Counsel***
**PETER SUNG OHR**
***Associate General Counsel***
**RUTH E. BURDICK**
***Deputy Associate General Counsel***
**MEREDITH JASON**
***Assistant General Counsel***

**National Labor Relations Board**

# TABLE OF CONTENTS

**Headings** **Page(s)**

Statement in support of rehearing en banc....................1

Statement of the case....................3

Argument....................6

I. The panel majority misconstrued the Supreme Court's opinion in *Loper Bright* and applied an erroneous standard of review ....................6

II. The panel majority impermissibly disregarded the prior holding that the successor-bar rule is rational and consistent with the NLRA ....................15

Conclusion ....................18

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Action All. of Senior Citizens of Greater Phila. v. Sullivan*,
930 F.2d 77 (D.C. Cir. 1991) ....................15

*Allentown Mack Sales & Serv. v. NLRB*,
522 U.S. 359 (1998) ....................3, 13

*Auciello Iron Works, Inc. v. NLRB*,
517 U.S. 781 (1996) .................... 3, 14, 16

*Beth Israel Hosp. v. NLRB*,
437 U.S. 483 (1978) ....................2, 7

*Brooks v. NLRB*,
348 U.S. 96 (1954) .................... 13, 16

*Chevron U.S.A. v. Nat. Res. Def. Council*,
467 U.S. 837 (1984) .................... 8, 9, 16

*Curtin Matheson Sci. v. NLRB*,
494 U.S. 775 (1990) .................... 7, 8, 15

*Exxel/Atmos, Inc. v. NLRB*,
28 F.3d 1243 (D.C. Cir. 1994) ....................14

*Fall River Dyeing & Finishing Corp. v. NLRB*,
482 U.S. 27 (1987) ....................12

*Ford Motor Co. v. NLRB*,
441 U.S. 488 (1979) .................... 10, 11

*Franks Bros. Co. v. NLRB*,
321 U.S. 702 (1944) .................... 12, 16

*Hosp. Menonita de Guayama, Inc. v. NLRB*,
94 F.4th 1 (D.C. Cir. 2024) .................... 5, 6, 10, 15, 16

*J.G. Kern Enters. v. NLRB*,
94 F.4th 18 (D.C. Cir. 2024) ....................13

## TABLE OF AUTHORITIES

**Cases (continued)** **Page(s)**

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024) ........ 1, 2, 3, 6, 8, 9, 10, 15

*NLRB v. Burns Int'l Sec. Servs., Inc.*,
406 U.S. 272 (1972) ........ 14

*NLRB v. Erie Resistor Co.*,
373 U.S. 221 (1963) ........ 7, 8

*NLRB v. Gissel Packing Co.*,
395 U.S. 575 (1969) ........ 12

*NLRB v. Iron Workers, Local No. 103*,
434 U.S. 335 (1978) ........ 7, 10, 11

*NLRB v. Lily Transp. Corp.*,
853 F.3d 31 (1st Cir. 2017) ........ 16

*NLRB v. P. Lorillard Co.*,
314 U.S. 512 (1942) ........ 12

*NLRB v. Truck Drivers, Local No. 449*,
353 U.S. 87 (1957) ........ 7

*Republic Aviation v. NLRB*,
324 U.S. 793 (1945) ........ 7

*Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*,
436 U.S. 180 (1978) ........ 6, 7

*UCL-UNICCO Serv. Co.*,
357 NLRB 801 (2011) ........ 3, 4

*United States v. Adewani*,
467 F.3d 1340 (D.C. Cir. 2006) ........ 3, 15

## TABLE OF AUTHORITIES

**Statutes** **Page(s)**

National Labor Relations Act, as amended
(29 U.S.C. §§ 151, et seq.)

29 U.S.C. § 157 .......... 10, 11, 16
29 U.S.C. § 159 .......... 11
29 U.S.C. § 159(c)(3) .......... 13

# GLOSSARY

| | |
|---|---|
| the Board | National Labor Relations Board |
| Dissenting Op. | Dissenting Opinion on Remand (*see* Addendum) |
| JA | Joint Appendix |
| the NLRA | National Labor Relations Act, 29 U.S.C. §§ 151, et seq. |
| Op. | Majority Opinion on Remand (*see* Addendum) |

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**Nos. 22-1163, 22-1180**

---

**HOSPITAL MENONITA DE GUAYAMA, INC.**

**Petitioner/Cross-Respondent**

**v.**

**NATIONAL LABOR RELATIONS BOARD**

**Respondent/Cross-Petitioner**

---

**ON REMAND FROM**
**THE SUPREME COURT OF THE UNITED STATES**

---

**PETITION FOR REHEARING EN BANC ON BEHALF OF**
**THE NATIONAL LABOR RELATIONS BOARD**

---

## STATEMENT IN SUPPORT OF REHEARING EN BANC

Pursuant to Federal Rule of Appellate Procedure 40, the National Labor Relations Board ("the Board") respectfully seeks rehearing en banc of an opinion by a panel of this Court (Judges Rao and Walker; Senior Judge Randolph, dissenting) on remand from the Supreme Court. The panel majority misconstrued the Supreme Court's opinion in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), and improperly disregarded holdings by a prior panel (Senior Judge Edwards and Judge Henderson; Judge Katsas, concurring) in the same matter.

This case implicates recurring issues of exceptional importance regarding the impact of *Loper Bright* on the deference owed to the Board's reasonable

constructions of national labor policy under the National Labor Relations Act, 29 U.S.C. §§ 151, et seq. (“the NLRA”). As Senior Judge Randolph persuasively explained in dissent, the majority opinion is premised on a fundamental “analytic error” regarding the role of courts when reviewing the Board’s exercise of its delegated policymaking authority. Dissenting Op. 3. By improperly expanding that role, the majority opinion risks opening the floodgates to a slew of litigation seeking judicial vetoes of established Board policies—particularly given that the NLRA permits parties nationwide to petition in this Circuit. Rehearing en banc is needed to address these issues and to correct a series of erroneous holdings by the majority that conflict with binding Supreme Court and D.C. Circuit precedent.

**First**, rehearing is necessary to correct the majority’s flawed interpretation of *Loper Bright* and its application of a novel standard of review that “defies” longstanding Supreme Court precedent. Dissenting Op. 4. By refusing to consider the reasonableness of the Board’s construction of national labor policy and by substituting the majority’s own preferred balancing of competing statutory interests for that of the Board, the majority opinion conflicts with Supreme Court and D.C. Circuit opinions too numerous to cite. *E.g.*, *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500-01 (1978); *infra*, pp. 6-8. And as a consequence of applying an incorrect standard of review, the majority opinion rests on a construction of the NLRA that

is irreconcilable with myriad precedent upholding analogous Board policies. *E.g.*, *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 785-88 (1996); *infra*, pp. 11-14.

**Second**, rehearing is necessary to correct the majority's disregard of dispositive holdings by the original panel that were not called into question by the Supreme Court's pro forma vacatur and remand in the wake of *Loper Bright*. Dissenting Op. 7-9. By refusing to accord precedential weight to the original panel's analysis, the majority opinion conflicts with binding in-circuit precedent. *E.g.*, *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006).

## STATEMENT OF THE CASE

**a.** Throughout its history, the Board has maintained various evidentiary presumptions, both rebuttable and irrebuttable, regarding a union's continued status as the majority representative of employees in a bargaining unit. *Allentown Mack Sales & Serv. v. NLRB*, 522 U.S. 359, 378 (1998).

In *UGL-UNICCO Service Co.*, 357 NLRB 801 (2011), the Board addressed the rising prevalence of corporate acquisitions in the American economy by revising its approach toward successor employers' bargaining obligations. Under the "successor bar" policy adopted by the Board in that case, an incumbent union is entitled to an irrebuttable presumption of continued majority support until after a "reasonable period," not to exceed one year, from the initial commencement of good-faith collective bargaining between the union and the successor employer.

*Id.* at 801-10. The Board explained that "whether to establish a 'successor bar' presents an important policy choice, a choice that cannot be resolved by parsing the words of [the NLRA], but which instead calls on the Board to consider the larger, sometimes competing, goals of the statute." *Id.* at 804. Accordingly, the Board examined the competing statutory interests in detail, before concluding that the successor-bar rule best effectuates the policies of the NLRA. *Id.* at 801-10.

**b.** In late 2017, Hospital Menonita acquired the assets of Hospital San Lucas Guayama in Puerto Rico and, as the successor employer, sought to retain all of the predecessor employees. (JA.698.) Hospital Menonita extended recognition to the union representing five different bargaining units of employees. (JA.698.) The union had represented two of the units for nearly 20 years. (JA.698.)

Soon thereafter, however, Hospital Menonita began disregarding its obligations under the NLRA, including by refusing to commence good-faith negotiations over collective-bargaining agreements for the five units. (JA.698-99.) In early 2018, Hospital Menonita withdrew recognition from the union in each of the five units, based on evidence allegedly showing a loss of majority support. (JA.698-700.) The union filed unfair-labor-practice charges with the Board.

**c.** On June 28, 2022, the Board issued a Decision and Order finding that Hospital Menonita violated the NLRA by failing to bargain in good faith and by withdrawing recognition from the union prior to the end of the successor-bar

period. (JA.697-705.) Pursuant to its successor-bar rule, the Board declined to examine whether there was evidence of an untainted loss of majority support. (JA.698.) In doing so, the Board reaffirmed that the successor bar "strike[s] the appropriate balance between labor relations stability and employee free choice." (JA.703.) Member Ring dissented in part and argued the Board should revisit its policy and adopt instead a rebuttable presumption of majority support. (JA.706-17.) Hospital Menonita filed a petition for review with this Court.

**d.** On February 27, 2024, the Court (Senior Judge Edwards and Judge Henderson; Judge Katsas, concurring) issued an opinion enforcing the Board's Order. *Hospital Menonita de Guayama, Inc. v. NLRB*, 94 F.4th 1 (D.C. Cir. 2024) ("*Hospital Menonita I*"). In rejecting Hospital Menonita's challenge to the Board's successor-bar rule, the majority emphasized that Congress assigned the Board "primary responsibility for developing and applying national labor policy." *Id.* at 5. The majority carefully reviewed the competing statutory interests at play and the Board's stated justifications for adopting an irrebuttable presumption, and held that the Board's chosen policy represents "reasoned" decisionmaking that does not unduly infringe upon employee free choice or contravene the NLRA. *Id.* at 11-16. Hospital Menonita filed a petition for rehearing en banc, which was denied without a vote, and then a petition for a writ of certiorari.

**e.** On December 16, 2024, the Supreme Court issued a summary order granting certiorari, vacating the judgment in *Hospital Menonita I*, and remanding the case for further consideration in light of *Loper Bright*.

**f.** On July 21, 2026, the Court (Judges Rao and Walker; Senior Judge Randolph, dissenting) issued an opinion on remand concluding that the original panel opinion "does not comport with *Loper Bright*," dismissing the original panel's substantive analysis, and holding instead that the successor-bar rule "contravenes" the statutory policies of the NLRA. Op. 2-19. Senior Judge Randolph dissented on the grounds that the majority failed to take the proper lesson from *Loper Bright* and misrepresented the original panel's careful analysis. Dissenting Op. 1-9. He explained why *Loper Bright* did not alter the longstanding, deferential standard of judicial review dictated by "the NLRA itself," and why the panel on remand was obligated to reaffirm the original panel majority's dispositive application of that established standard. Dissenting Op. 1-9.

## ARGUMENT

### I. The Panel Majority Misconstrued the Supreme Court's Opinion in *Loper Bright* and Applied an Erroneous Standard of Review

**1. a.** By enacting the NLRA, Congress sought to create an adaptable new regulatory scheme "to be administered by an independent agency which would develop experience and expertise in the labor relations area." *Sears, Roebuck & Co. v. San Diego Cnty. Dist. Council of Carpenters*, 436 U.S. 180, 190-91 (1978).

To ensure "uniform development of the new national labor policy," *id.*, Congress gave the Board discretion to refine its policies over time by applying the "general" statutory language to "the infinite combination of events which might be charged as violative of its terms," *Beth Israel Hosp. v. NLRB*, 437 U.S. 483, 500-01 (1978) (quoting *Republic Aviation v. NLRB*, 324 U.S. 793, 798 (1945)). The Board is accordingly tasked with balancing the "conflicting legitimate interests" embodied in the NLRA, *id.*, and with "formulat[ing] rules to fill the interstices of the broad statutory provisions," *Curtin Matheson Sci. v. NLRB*, 494 U.S. 775, 786 (1990).

As a result, the Supreme Court has consistently recognized that the NLRA delegates significant policymaking discretion to the Board, and that the task of balancing the competing interests embodied in the NLRA is "a difficult and delicate responsibility, which the Congress has committed primarily to [the Board], subject to limited judicial review." *Beth Israel*, 437 U.S. at 501 (quoting *NLRB v. Truck Drivers, Local No. 449*, 353 U.S. 87, 96 (1957)). The Board's construction of national labor policy under the NLRA is entitled to "considerable deference," even where a reviewing court "may prefer a different application of the relevant sections [of the statute]." *NLRB v. Iron Workers, Local No. 103*, 434 U.S. 335, 351 (1978). Although Board decisions are "by no means immune from attack," reviewing courts must "recognize the Board's special function" and defer to the Board's constructions of national labor policy as long as the Board engaged in

reasoned decisionmaking and "did not exceed its powers or venture into an area barred by the statute." *NLRB v. Erie Resistor Co.*, 373 U.S. 221, 236 (1963). In short, Congress has directed reviewing courts to uphold Board policies that are "rational and consistent with [the NLRA]." *Curtin Matheson*, 494 U.S. at 787.

**b.** In *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), the Supreme Court overruled *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837 (1984). *Chevron* had created a distinct form of judicial deference by holding that in every case, regardless of the statute at issue, courts were obligated to adopt permissible agency interpretations of ambiguous statutory language—an across-the-board form of deference that courts "had never before applied." *Loper Bright*, 603 U.S. at 392 & n.4, 396-97. In essence, *Chevron* had required courts to "treat statutory ambiguity as an implicit delegation of discretionary interpretative authority to an agency." Dissenting Op. 2. *Loper Bright* held this was erroneous and contrary to the will of Congress. 603 U.S. at 398-407. In overruling *Chevron*, however, *Loper Bright* expressly reaffirmed that Congress may enact specific statutes granting discretionary authority to agencies tasked with "prescrib[ing] rules to 'fill up the details' of a statutory scheme." *Id.* at 394-95, 404. Nothing in *Loper Bright* called into question the longstanding precedent governing the NLRA.

**2. a.** As Senior Judge Randolph observed in dissent, the majority opinion misconstrued *Loper Bright* as having displaced all forms of judicial deference to

agencies' substantive policymaking, even when that deference is dictated by a statute-specific scheme of delegated authority. Dissenting Op. 3-7. But *Loper Bright* makes "crystal clear" that, in overruling *Chevron*, the Supreme Court was not "sweeping away [all] preexisting grounds for recognizing agency discretion." Dissenting Op. 5. Contrary to the majority's analysis, *Loper Bright* explains that, while courts have a duty to interpret statutes, it may be that "the best reading of a statute is that it delegates discretionary authority to an agency." 603 U.S. at 396.

And as Senior Judge Randolph further observed, the NLRA "exemplifies" that type of statute-specific delegation. Dissenting Op. 6. It has been settled law for nearly 90 years that Congress delegated the primary responsibility for developing and applying national labor policy to the Board, subject to limited judicial review. Dissenting Op. 3-7. In other words, the Supreme Court has already performed the steps *Loper Bright* identifies by conclusively: determining "the best reading of [the NLRA]," 603 U.S. at 395; identifying a congressional delegation of authority to the Board, *id.*; and "fixing the boundaries" of the Board's delegated authority, *id.*, through the deferential standard of review outlined above. Once those steps have been performed with respect to a statute, as they have with respect to the NLRA, *Loper Bright* directs courts to "stay out of discretionary policymaking left to the political branches." *Id.* at 404.

**b.** In conflict with the reasoning in *Loper Bright*, the panel majority posited that reviewing courts are no longer ever required to "defer to agencies when deciding questions of law." Op. 7-11. The majority faulted the original panel in *Hospital Menonita I* for purportedly failing to "independently determine" whether the successor-bar rule represents a proper construction of national labor policy. Op. 9-11. The majority suggested that, in making such determinations, courts should no longer take into account the "reasonableness" of the Board's own construction. Op. 16. Even though the original panel had carefully reviewed the Board's statutory justifications for adopting the successor-bar rule and had rejected Hospital Menonita's contention that the rule "contravenes Section 7 of the NLRA," 94 F.4th at 13-15, the majority dismissed that analysis out of hand, Op. 9-11.

Despite the majority's claim that it was merely "polic[ing] the outer statutory boundaries" of the Board's delegated authority, Op. 9, those boundaries were fixed many decades ago by the binding precedent discussed above setting forth the correct standard of review. Under the correct standard, as long as the Board's construction of the law is "reasonably defensible," it "should not be rejected merely because the courts might prefer another view of the statute." *Ford Motor Co. v. NLRB*, 441 U.S. 488, 497 (1979). Reviewing courts are not meant to "approach the statutory construction issue *de novo* and without regard to [the Board's] administrative understanding of the statute[]." *Iron Workers*, 434 U.S. at

351. Instead, the role of a reviewing court is to ensure that a Board policy is not "fundamentally inconsistent with the structure of [the NLRA]," and that it does not move "into a new area of regulation which Congress has not committed to [the Board]." *Ford Motor*, 441 U.S. at 497. Here, by contrast, the majority's approach reflects a *de novo* rebalancing of competing statutory interests.

**c.** The majority's substantive analysis illustrates its departure from the correct standard of review. Exercising "independent judgment" to determine the "best" construction of the NLRA without affording any deference to the Board's subject-matter expertise, the majority concluded that Sections 7 and 9 of the NLRA, 29 U.S.C. §§ 157, 159, should be construed as prohibiting any policy requiring an employer to bargain with a union that may have lost majority support. Op. 8, 12-15. In the majority's view, such a policy would be inconsistent with an "unqualified employee right to freedom of choice" embodied in Section 7, and with the "requirement of majority rule" embodied in Section 9. Op. 13-16. The majority thus held that the successor bar "contravenes" the NLRA. Op. 14.

But the majority's approach is self-evidently premised on an erroneous standard of review, because it is irreconcilable with decades of Supreme Court and D.C. Circuit precedent upholding Board policies that require temporary bargaining with unions that may have lost majority support. As shown below, such precedent is premised on a recognition that the NLRA requires deference to "reasonable"

Board policies designed to "balance" competing statutory interests—including the equally central goals of labor-relations stability and employee free choice. *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 37-40, 42-53 (1987).

As early as *NLRB v. P. Lorillard Co.*, 314 U.S. 512 (1942), the Supreme Court made clear that the Board may reasonably require an employer to bargain with a union that is alleged to have lost majority support when doing so would, in the Board's expert judgment, effectuate the policies of the NLRA. *Id.* at 513 ("This was for the Board to determine, and the court below was in error in modifying the Board's order in this respect."). The Supreme Court reiterated that "it is for the Board [and] not the courts" to determine whether bargaining is warranted to effectuate the statute in such circumstances. *Franks Bros. Co. v. NLRB*, 321 U.S. 702, 704-06 (1944). As long as the Board adopts its chosen approach based on a reasonable construction of the broader policies underlying the NLRA, and "[o]ut of its wide experience" administering federal labor law, then the Board has acted "within [its] discretion" and is entitled to judicial affirmance. *Id.*; *see NLRB v. Gissel Packing Co.*, 395 U.S. 575, 610-13 (1969) ("We have long held that the Board … has the authority to issue a bargaining order without first requiring the union to show that it has been able to maintain its majority status.").

Indeed, the majority's approach in rejecting the successor-bar rule is irreconcilable with decades of precedent specifically upholding Board policies that

bar challenges to a union's majority status during similar critical periods of transition in the workplace. Thus, for example, the Supreme Court has upheld the Board's one-year bar on challenges to a union's majority status following initial certification as a reasonable exercise of "the Board's discretion in carrying out congressional policy." *Brooks v. NLRB*, 348 U.S. 96, 103-04 (1954); *accord Allentown Mack*, 522 U.S. at 378 (citing the certification bar as an example of the Board's discretionary authority to "adopt counterfactual evidentiary presumptions" designed to "further[] particular legal or policy goals").[1] The Board routinely extends the duration of this irrebuttable presumption as a remedy for employer unfair labor practices—a universally approved and longstanding practice that this Court has upheld as falling "squarely within [the Board's] broad discretion." *J.G. Kern Enters. v. NLRB*, 94 F.4th 18, 28-33 (D.C. Cir. 2024).

---

[1] The majority posited that the Board's certification bar is unique because it is "establish[ed]" by 29 U.S.C. § 159(c)(3), which prohibits multiple elections in the same unit within one year. Op. 13-14 & n.6. But *Brooks* outlines numerous ways that view is mistaken: (i) the Board adopted its certification-bar policy before 29 U.S.C. § 159(c)(3) was enacted; (ii) the issue in *Brooks* was whether the employer could refuse to bargain based on proffered evidence of a loss of majority support, which it would normally be entitled to do without the need for a new election; and (iii) the certification bar is not coterminous with the statutory prohibition on repeat elections, because there is often a significant delay between an election and the resulting certification. 348 U.S. at 98-104. The majority misstates the Supreme Court's analysis in *Brooks*, Op. 13, which acknowledged that the policy does *not* mirror the statute, but held that it is "a matter appropriately determined by the Board's administrative authority," 348 U.S. at 104.

This Court has upheld the Board's application of a similar irrebuttable presumption that attaches after an employer's voluntary recognition of a union without an election. *Exxel/Atmos, Inc. v. NLRB*, 28 F.3d 1243, 1246-47 (D.C. Cir. 1994). And the Supreme Court has repeatedly endorsed the Board's irrebuttable presumption of continued majority support, for a period of up to three years, during the initial term of a validly executed collective-bargaining agreement. *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781, 785-88 (1996); *NLRB v. Burns Int'l Sec. Servs., Inc.*, 406 U.S. 272, 290 & n.12 (1972). In doing so, the Supreme Court has invoked the "considerable deference" owed to the Board "by virtue of its charge to develop national labor policy … through interstitial rulemaking that is 'rational and consistent with [the NLRA].'" *Auciello*, 517 U.S. at 787-88 (citations omitted).[2]

The majority's opinion cannot be squared with any of the foregoing precedent, thus making manifest the sea change that the majority's opinion represents. Rehearing en banc is needed to clarify the correct standard of review.

---

[2] The majority misconstrues *Auciello* and the Board's contract-bar policy. Op. 18. The Board has noted that there might be unusual scenarios where the validity of a contract's execution is called into question. But during the initial term of a validly executed contract, the Board's policy does *not* allow for employees to file a decertification petition, or for employers to "overcome" the presumption of continued majority support. *Contra* Op. 18. The Supreme Court recognized that the presumption is irrebuttable in such circumstances. 517 U.S. at 786.

## II. The Panel Majority Impermissibly Disregarded the Prior Holding That the Successor-Bar Rule Is Rational and Consistent with the NLRA

**a.** It is settled law in this Circuit that when the Supreme Court vacates one of this Court's judgments "without addressing the merits of a particular holding in the panel opinion, that holding 'continues to have precedential weight.'" *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) (quoting *Action All. of Senior Citizens of Greater Phila. v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir. 1991)).

**b.** As Senior Judge Randolph observed in dissent, the majority contravened the foregoing precedent by revisiting an issue that the original panel had already conclusively resolved: namely, whether the Board's successor-bar rule is rational and consistent with the NLRA. Dissenting Op. 7-9. *Loper Bright* did not alter the standard of review applied in *Hospital Menonita I*, and thus the majority on remand had no grounds for revisiting the original panel's dispositive analysis.

The original panel majority was unequivocal when defining the issue presented: because the Supreme Court has "emphasized often" that Congress granted the Board "primary responsibility for developing and applying national labor policy," the issue before the Court was whether the Board's successor-bar rule "is rational and consistent with the NLRA." 94 F.4th at 5 (quoting *Curtin Matheson*, 494 U.S. at 786-87). The original panel majority carefully examined the Board's balancing of the competing interests in the statute, including both labor-relations stability and employee choice, and held that the successor-bar rule

represents "reasoned Board decisionmaking" that fairly advances the policies of the NLRA. *Id.* at 12-15. The original panel majority did not cite *Chevron*, much less set forth or apply the familiar two-step *Chevron* framework. *See id.* at 11-16. To the contrary, Judge Katsas felt obligated to write separately, in a concurring opinion not joined by Judge Henderson or Senior Judge Edwards, to express his view that the same result was warranted under a *Chevron* analysis. *Id.* at 16-18.[3]

Indeed, the central premise of the majority's opinion on remand—that the successor-bar rule "contravenes" the interest in employee free choice embodied in Section 7 of the NLRA, Op. 11-13—was expressly rejected by the original panel majority, which reviewed the statutory interests at play and held that the Board's policy does not "contravene[] Section 7 of the NLRA." 94 F.4th at 13-15. The original panel's holding is consistent with longstanding Supreme Court precedent affirming that the temporary extension of a bargaining obligation in a unit in which a union may have lost majority support does not unduly infringe upon the Section 7 rights of dissenting employees. *Gissel*, 395 U.S. at 612-13; *Franks Bros.*, 321 U.S. at 705-06; *accord Auciello*, 517 U.S. at 790; *Brooks*, 348 U.S. at 103.

---

[3] As Senior Judge Randolph explained, the fact that the First Circuit cited *Chevron* in passing in *NLRB v. Lily Transportation Corp.*, 853 F.3d 31 (1st Cir. 2017), is a red herring. Dissenting Op. 7-8. The original panel only cited *Lily Transportation* for its persuasive rejection of specific arguments. 94 F.4th at 14-15.

The majority was not at liberty on remand to cast aside the original panel's dispositive analysis, just as it was not at liberty to substitute its own preferred construction of national labor policy for the Board's reasonable construction. Rehearing en banc is necessary to correct the majority's errors.

**CONCLUSION**

For the foregoing reasons, the Board respectfully requests that the Court grant rehearing en banc to clarify and apply the correct standard of review and to reaffirm the original panel's analysis upholding the Board's successor-bar rule.

Respectfully submitted,

/s/ Kira Dellinger Vol
KIRA DELLINGER VOL
*Supervisory Attorney*

/s/ Eric Weitz
ERIC WEITZ
*Attorney*

National Labor Relations Board
1015 Half Street SE
Washington, DC 20570
(202) 273-0656
(202) 273-3757

CRYSTAL S. CAREY
*General Counsel*

LYNISA B. MICHALSKI
*Acting Deputy General Counsel*

PETER SUNG OHR
*Associate General Counsel*

RUTH E. BURDICK
*Deputy Associate General Counsel*

MEREDITH JASON
*Assistant General Counsel*

National Labor Relations Board
September 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| HOSPITAL MENONITA DE GUAYAMA, INC. | ) | |
| | ) | Nos. 22-1163 |
| Petitioner/Cross-Respondent | ) | 22-1180 |
| | ) | |
| v. | ) | |
| | ) | |
| NATIONAL LABOR RELATIONS BOARD | ) | |
| | ) | |
| Respondent/Cross-Petitioner | ) | |

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the Board certifies that its petition contains 3,886 words of proportionally-spaced, 14-point type, and that the word-processing system used was Microsoft Word 365. The Board further certifies that the PDF file submitted to the Court has been scanned for viruses using Microsoft Defender, and is virus-free according to that program. The Board further certifies that the paper copies to be filed with the Court are identical to the electronically filed version.

Respectfully submitted,

/s/ Ruth E. Burdick

Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, S.E.
Washington, D.C. 20570
(202) 273-2960

Dated at Washington, D.C.,
this 1st day of September, 2026

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

HOSPITAL MENONITA DE GUAYAMA, INC. )
) Nos. 22-1163
Petitioner/Cross-Respondent ) 22-1180
)
v. )
)
NATIONAL LABOR RELATIONS BOARD )
)
Respondent/Cross-Petitioner )

**CERTIFICATE OF SERVICE**

I hereby certify that on September 1, 2026, I electronically filed the foregoing document with the Clerk of the Court for the U.S. Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system. I certify that the foregoing document will be served via the appellate CM/ECF system on all parties or their counsel of record.

Respectfully submitted,

/s/ Ruth E. Burdick

Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, S.E.
Washington, D.C. 20570
(202) 273-2960

Dated at Washington, D.C.,
this 1st day of September, 2026

# ADDENDUM

## CERTIFICATE AS TO PARTIES AND AMICI

Pursuant to Circuit Rules 28(a)(1)(A) and 40(c), counsel for the National Labor Relations Board ("the Board") certifies that the following list contains all parties, intervenors, and amici who participated in the Board proceedings or the subsequent review proceedings in this Court.

Hospital Menonita de Guayama, Inc. ("the Hospital") was the respondent before the Board and is the petitioner/cross-respondent before this Court. The Board is the respondent/cross-petitioner before this Court. Unidad Laboral de Enfermeras(os) y Empleados de la Salud ("the Union") was the charging party before the Board. The Board's General Counsel was a party before the Board. The American Federation of Labor and Congress of Industrial Organizations ("the AFL-CIO") filed an amicus curiae brief on remand before this Court.

Respectfully submitted,

/s/ Ruth E. Burdick

Ruth E. Burdick
Deputy Associate General Counsel
National Labor Relations Board
1015 Half Street, S.E.
Washington, D.C. 20570
(202) 273-2960

Dated at Washington, D.C.,
this 1st day of September, 2026

# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued September 4, 2025 Decided July 21, 2026

No. 22-1163

HOSPITAL MENONITA DE GUAYAMA, INC.,
PETITIONER

v.

NATIONAL LABOR RELATIONS BOARD,
RESPONDENT

---

Consolidated with 22-1180

---

On Remand from the Supreme Court of the United States

---

*Patrick M. Muldowney* argued the cause for petitioner. With him on the briefs were *Angel Munoz Noya* and *Meagan L. Martin*.

*Heather S. Beard*, Senior Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were *William B. Cowen*, Acting General Counsel, *Ruth E. Burdick*, Deputy Associate General Counsel, *Meredith Jason*, Assistant General Counsel, and *Elizabeth A. Heaney*, Supervisory Attorney. *David S. Habenstreit*, Assistant General Counsel, entered an appearance.

*Matthew J. Ginsburg* and *Maneesh Sharma* were on the brief for *amicus curiae* American Federation of Labor-Congress of Industrial Organizations in support of respondent.

Before: RAO and WALKER, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* RAO.

Dissenting opinion filed by *Senior Circuit Judge* RANDOLPH.

RAO, *Circuit Judge*: The National Labor Relations Board created a rule that compels the new owner of a business to recognize and bargain with an incumbent union for up to one year, irrespective of whether that union has the support of a majority of employees. Hospital Menonita de Guayama (the "Hospital") challenged the so-called "successor bar" as inconsistent with the National Labor Relations Act. This court upheld the successor bar by deferring to the Board's judgment and its "reasonable" policymaking choices. We must now reconsider the Hospital's legal challenge because the Supreme Court granted certiorari, vacated our judgment, and remanded for further consideration in light of *Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244 (2024).

*Loper Bright* reaffirmed that courts have an independent obligation to interpret statutes and not defer to an agency's interpretation of the scope of its statutory authority. Reviewing the Hospital's statutory challenge without deference to the Board, we conclude the successor bar is inconsistent with the Act. Because the bar effectively suspends the Act's core guarantees of employee freedom and majority rule in collective bargaining, the Board lacks authority to impose this rule. We

therefore grant the Hospital's petition for review and deny the Board's cross-petition for enforcement.

I.

A.

This case concerns the Board's authority to establish the successor bar, and so we begin with the statutory framework governing employees' rights to bargain collectively. The National Labor Relations Act "protect[s] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151. Section 7 of the Act secures employees' freedom of choice by vesting them with the right "to bargain collectively through representatives of their own choosing" or "to refrain" from doing so. *Id.* § 157. To effectuate this right, section 9(a) requires that the "exclusive" bargaining representative for each employee unit be "designated or selected" by "the majority of the employees in [the] unit." *Id.* § 159(a).

The unfair labor practices prohibited by section 8 ensure that unions and employers alike do not restrain employees' exercise of their Section 7 right to choose whether and how to collectively bargain. *Id.* § 158(a)(1), (b)(1). Once a majority of employees have decided how to exercise that right, their choice "cannot be arrogated by a union or an employer." *Colorado Fire Sprinkler, Inc. v. NLRB*, 891 F.3d 1031, 1040 (D.C. Cir. 2018) (cleaned up); *see* 29 U.S.C. §§ 158(a)–(b), 160. An employer must bargain with a union that has been chosen by a majority of employees and is prohibited from bargaining with a union that lacks majority support. *See* 29 U.S.C. §§ 159(a), 158(a)(1)–(2) & (5); *Int'l Ladies' Garment Workers' Union, AFL-CIO v. NLRB* ("*Garment Workers*"), 366 U.S. 731, 737–38 (1961) (holding an employer abridges section 7 rights when it recognizes and bargains with a union "selected by a minority

of its employees, thereby impressing that agent upon the nonconsenting majority").

A union is recognized as representing a majority of employees if it is certified by the Board following an election or obtains "recognition from the employer by providing proof of majority support." *Colorado Fire Sprinkler*, 891 F.3d at 1035 (cleaned up); *see* 29 U.S.C. § 159(a); *Allied Mech. Servs., Inc. v. NLRB*, 668 F.3d 758, 766–67 (D.C. Cir. 2012) (explaining representatives may be chosen by a majority "by means other than elections," namely employer recognition) (cleaned up). Elections are conducted and certified by the Board if an employee, an employer, or a union petitions the Board for an election and demonstrates there is "a question of representation" to be resolved. 29 U.S.C. § 159(c)(1). After a "valid election" has been held, the Act expressly bars a new election for one year. *Id.* § 159(c)(3).

An employer that believes a union no longer represents a majority of employees may challenge the union's representation status either by filing an election petition with the Board or by withdrawing recognition of the union, refusing to bargain, and then defending against any unfair labor practice charges by demonstrating the union lost majority support. *Pac. Coast Supply, LLC v. NLRB*, 801 F.3d 321, 326 (D.C. Cir. 2015); *see also Garment Workers*, 366 U.S. at 740 (similar).

B.

The Hospital challenges the lawfulness of the Board's "successor bar," which prohibits any challenge to an incumbent union's representation status for up to one year after a business changes ownership. Adopted in an adjudication by a divided Board in 2011, the successor bar creates an irrebuttable presumption that an incumbent union retains majority support when a new owner assumes control of a business and retains a

majority of the existing employees.[1] *UGL-UNICCO Serv. Co.*, 357 NLRB 801, 802–03, 808–10 (2011). The bar "prevent[s] any challenge to the union's status, whether … by the employer, by employees, or by a rival union." *Id.* at 803. Successor employers must recognize and bargain with an incumbent union for up to one year regardless of whether the union continues to represent a majority of employees. *Id.* at 808–09.

The Board justified the successor bar as a "policy choice" necessary to "preserve … the stability of the existing collective-bargaining relationship." *Id.* at 804–07. The dissenting member criticized the irrebuttable bar as denying employees "an opportunity to exercise their right of free choice on the question of collective-bargaining representation" and enabling incumbent unions to "operate free from any electoral challenge." *Id.* at 812 (Member Hayes, dissenting).

C.

The Hospital became a successor employer in 2017. The incumbent union, Unidad Laboral de Enfermeras (os) y Empleados de la Salud (the "Union"), claimed to represent the Hospital's employees for all five collective bargaining units. The Union had never negotiated a collective bargaining agreement for two of the units, and the agreements it negotiated for the other three had expired more than four years before the change in ownership. The Hospital initially recognized the

---

[1] The Board first imposed a successor bar in 1999 but then repudiated it a few years later. *Compare St. Elizabeth Manor, Inc.*, 329 NLRB 341, 344 (1999) (adopting successor bar), *with MV Transp.*, 337 NLRB 770, 772–73 (2002) (rejecting the successor bar because it "promotes the stability of bargaining relationships to the exclusion of the employees' Section 7 rights to choose their bargaining representative").

Union but later received evidence showing that in each of the five bargaining units a majority (and in one unit all) of the employees rejected the Union as their representative. The Hospital thereafter refused to bargain and ultimately withdrew recognition of the Union for all units.

The Board charged the Hospital with unfair labor practices under sections 8(a)(1) and 8(a)(5), principally alleging the Hospital unlawfully withdrew recognition and refused to bargain with the Union. *See Hosp. Menonita de Guayama, Inc.*, 371 NLRB No. 108, at *1 (June 28, 2022). An administrative law judge ("ALJ") ruled against the Hospital on these charges. As relevant here, the ALJ applied the successor bar and refused to consider the Hospital's evidence that the Union no longer represented a majority of the employees.

Before the Board, the Hospital argued that the successor bar contravenes the Act, and therefore the Hospital must be allowed to put forward evidence that the refusal to bargain was lawful because the Union was not a majority representative. A divided three-member Board panel adopted the ALJ's findings and conclusions and rejected the Hospital's challenge to the successor bar. *See id.* The Board ordered the Hospital to "recognize and, on request, bargain in good faith with the Union." *Id.* at *7. Member Ring dissented, arguing the Board should abandon the successor bar because it "imposes an unwarranted restriction on employees' Section 7 rights."[2] *Id.* at *10 (Member Ring, dissenting in part).

---

[2] Other Board members have also argued that the successor bar is inconsistent with the requirements of the Act. *See FJC Sec. Servs. Inc.*, 360 NLRB 929, 929 (2014) (Member Miscimarra, concurring) ("I believe the successor-bar rules adopted in *UGL-UNICCO* are inappropriate and inconsistent with the Act in several respects."); *Jamestown Fabricated Steel & Supply, Inc.*, 362 NLRB 1314, 1315–

The Hospital petitioned for review. It raised various challenges to the Board's factual findings and remedies but primarily argued that the successor bar contravenes the Act. In *Hospital Menonita I*, this court rejected the statutory challenge, holding that "the Board is entitled to deference" and that the successor bar "is within the scope of reasoned interpretation of the NLRA." *Hosp. Menonita de Guayama, Inc. v. NLRB*, 94 F.4th 1, 14–15 (D.C. Cir. 2024) (cleaned up). In reaching this conclusion, the court explicitly adopted the First Circuit's reasons for upholding the successor bar, which rested on *Chevron* deference to the Board and a determination that the successor bar was a "reasonable" construction of the Act. *See NLRB v. Lily Transp. Corp.*, 853 F.3d 31, 35–38 (1st Cir. 2017) (applying *Chevron, U.S.A. Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). Echoing the First Circuit, this court also highlighted various policy considerations supporting the successor bar's reasonableness, including the bar's limited duration and the fact that a rebuttable presumption would "increase litigation time and expense." *Hospital Menonita I*, 94 F.4th at 15 (cleaned up); *see Lily*, 853 F.3d at 35 (same).

Soon after, the Supreme Court decided *Loper Bright*. The Court "overruled" *Chevron*, holding that reviewing courts should not defer to agencies when deciding questions of law. *Loper Bright*, 144 S. Ct. at 2273. Instead, courts must "interpret

---

16 (2015) (Member Johnson, concurring) (arguing that the successor bar "offends the Section 7 rights of employees"). And other members have continued to register their disagreement with the successor bar. *See, e.g.*, *Bay at N. Ridge Health & Rehab. Ctr., LLC*, 2018 WL 923825, at *1 n.1 (Feb. 14, 2018) (Chairman Kaplan); *Iss Action, Inc.*, 2021 WL 2961491, at *1 n.1 (July 12, 2021) (Member Emanuel); *Town & Country Foods*, 2026 WL 904697, at *1 n.1 (Mar. 26, 2026) (Members Murphy and Mayer).

statutes, no matter the context, based on the traditional tools of statutory construction." *Id.* at 2268.

The Hospital petitioned for certiorari, arguing *Hospital Menonita I* conflicted with *Loper Bright* because the panel failed to review de novo whether the successor bar violates the Act. The Supreme Court granted certiorari, vacated the panel's judgment, and remanded for "further consideration in light of *Loper Bright*." *Hosp. Menonita de Guayama, Inc. v. NLRB*, 145 S. Ct. 982 (2024).

II.

After the Supreme Court's vacatur and remand, we must first consider whether *Loper Bright* requires us to revisit the statutory analysis in *Hospital Menonita I*. *See Cavazos v. Smith*, 565 U.S. 1, 9 (2011) (per curiam) (requiring the court of appeals to "seriously confront[] the significance" of the intervening cases cited in the Supreme Court's vacatur and remand order). We conclude that it does.

*Loper Bright* affirms that courts must independently decide questions of law. The Supreme Court grounded this holding in the "traditional understanding of the judicial function, under which courts must exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright*, 144 S. Ct. at 2262. When deciding cases, courts must ascertain the "single, best meaning" of applicable law. *Id.* at 2266 ("In the business of statutory interpretation, if it is not the best, it is not permissible."). Challenges to agency action are no exception to these fundamental principles. *Id.* The Court overruled *Chevron* because courts must independently assess, not defer to, an agency's assertion of statutory authority for its actions. *See id.* at 2266, 2272–73. The judicial duty in this context is, "as always, to independently interpret the statute" using the traditional tools of statutory construction. *Id.* at 2263;

*see also Seven County Infrastructure Coal. v. Eagle County*, 145 S. Ct. 1497, 1511 (2025) ("As a general matter, when an agency interprets a statute, judicial review of the agency's interpretation is *de novo*."). When Congress "delegates discretionary authority to an agency," courts must "fix[] the boundaries of [the] delegated authority." *Loper Bright*, 144 S. Ct. at 2263 (quoting Henry P. Monaghan, Marbury *and the Administrative State*, 83 Colum. L. Rev. 1, 27 (1983)).

The Hospital raised a statutory challenge to the successor bar, namely that the bar contravenes the Act, and the Board therefore has no statutory authority to impose it. Following *Loper Bright*, we must resolve this challenge by independently determining whether the successor bar is within the Board's statutory authority.

In deciding the Hospital's petition, however, *Hospital Menonita I* deferred to the Board's conclusion that the successor bar was consistent with the Act. *Hospital Menonita I* was explicit about its choice to defer to the Board's "reasoned interpretation of the NLRA." 94 F.4th at 14 (cleaned up); *cf. id.* at 17 (Katsas, J., concurring) ("Under *Chevron*, the Court's decision seems to me correct."). And the court adopted the First Circuit's deferential analysis, which relied on *Chevron* to uphold the lawfulness of the successor bar.[3] *Hospital Menonita I*, 94 F.4th at 14–15 (citing *Lily* eleven times). Resolving a legal question by deferring to the Board is inconsistent with *Loper Bright*'s directive for courts to "police the outer statutory boundaries" of an agency's delegated authority. 144 S. Ct. at

---

[3] *Hospital Menonita I* did not rely on *Lily* as a mere "citation." Dissenting Op. 7–8. When rejecting the statutory challenge, the court relied exclusively on the First Circuit's *Chevron* analysis and concluded by stating, "We can find no reason to disagree with [*Lily*'s] analysis." *Hospital Menonita I*, 94 F.4th at 14–15.

2268. Accordingly, on remand we must independently assess the Hospital's legal claim that the successor bar contravenes the Act.[4]

The Board resists this conclusion and argues we should reaffirm the vacated decision because even after *Loper Bright* this court must defer to all reasonable labor policies adopted by the Board, including the successor bar. But the Hospital's challenge is not about the reasonableness of the successor bar as a policy judgment. Rather, the Hospital has maintained that the successor bar is inconsistent with the Act and therefore the Board has no statutory authority to impose it.

In response to the Hospital's challenge, our dissenting colleague repeatedly makes the unobjectionable observation that the Board may act within its delegated policymaking authority. But courts must ensure that the Board's policies are in fact consistent with its statutory authority, as the cases cited by the dissent confirm. *See* Dissenting Op. 4; *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42 (1987) (stating a Board rule will be upheld if "rational and consistent with the Act"); *NLRB v. Curtin Matheson Scientific, Inc.*, 494 U.S. 775, 787 (1990) (same); *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 364 (1998) (same). Because *Hospital Menonita I* did not independently determine whether

---

[4] On remand, the Hospital does not reassert its challenges to the Board's fact finding and remedies, and we do not disturb the conclusions of the vacated judgment on these issues, which are not undermined by *Loper Bright*. *See United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) ("When the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding continues to have precedential weight … in the absence of contrary authority.") (cleaned up).

the successor bar is consistent with the Act, it does not comport with *Loper Bright* or these older cases.

The Board and amicus also stress that *Loper Bright* did not "call into question prior cases that relied on the *Chevron* framework." *Loper Bright*, 144 S. Ct. at 2273. True, the judgment in *Loper Bright* does not necessarily justify overruling settled precedents that relied on *Chevron*. But *Hospital Menonita I* was not a settled precedent. It was this court's first decision on the successor bar, and the Hospital petitioned for certiorari after *Loper Bright* was decided. In granting certiorari, vacating the judgment, and remanding, the Court explicitly directed this court to reconsider our decision in light of *Loper Bright*.[5] *Hosp. Menonita*, 145 S. Ct. at 982. The Court's specific directive in this case takes precedence over *Loper Bright*'s general rule of respecting settled precedents.

Because *Loper Bright* prohibits us from deferring to the Board's legal conclusions, on remand we must reconsider the Hospital's statutory challenge and independently determine whether the successor bar is consistent with the Act.

III.

The Board's successor bar compels an employer who acquires a business to recognize and bargain with an incumbent union for up to one year, even if the union lacks majority support. The successor bar thus contravenes the Act by suspending two statutory protections: employees' right to choose whether and how to collectively bargain and their right

[5] The fact that the Court provided no reasoning for its action is beside the point. *Contra* Dissenting Op. 8–9. We cannot ignore the Court's grant, vacatur, and remand because it issued only an order.

to be represented by a union that has majority support. Moreover, we reject the Board's arguments that it has "policymaking" authority to suspend these guarantees of the Act. We therefore grant the Hospital's petition because the Board acted contrary to law when it applied the successor bar, refused to consider the Hospital's evidence that most of its employees rejected representation by the Union, and found the Hospital liable for an unfair labor practice.

A.

The successor bar violates sections 7 and 9 of the Act by requiring successor employers to recognize and bargain with an incumbent union, regardless of whether that union enjoys the support of a majority of employees.

The Act guarantees employees the right to choose a union that represents their interests. Section 7 provides employees with the unqualified right "to bargain collectively through representatives of their own choosing" or "to refrain" from such activity. 29 U.S.C. § 157. To effectuate employee freedom of choice, section 9(a) conditions a union's status as the "exclusive" bargaining representative on having the support of "the majority of the employees." *Id.* § 159(a). Employers must recognize and bargain with the exclusive representative chosen by a majority of employees. On the flip side, however, employers cannot recognize and bargain with a union that lacks majority support because that would unlawfully "impress[] that [union] upon the nonconsenting majority." *Garment Workers*, 366 U.S. at 737.

The successor bar nullifies these statutory protections for up to a year after a successor employer assumes control of a business. The bar prevents any claim—by an employer, employees, or a rival union—that the incumbent union lacks the majority support required by the Act. *See UGL-UNICCO*,

357 NLRB at 803 (explaining the successor bar "prevent[s] any challenge to the union's status"). Incumbent unions are thus deemed majority representatives by Board decree. Given an employer's statutory duty to recognize and to bargain with their employees' representative, the bar effectively compels employers to bargain with an incumbent union, even if the union indisputably lacks majority support. By entrenching incumbent unions, irrespective of whether they enjoy majority support, the successor bar is inconsistent with section 7's unqualified employee right to freedom of choice and section 9's requirement of majority rule.

Congress's provision of only one time bar against challenges to a union's majority status underscores the Board's lack of authority to adopt the successor bar. The Act generally requires majority representation, and it allows employees, employers, and other unions to test whether a union has majority support by petitioning the Board for an election. *See* 29 U.S.C. § 159(a), (c)(1). The Act, however, prohibits the Board from holding an election if "in the preceding twelve-month period, a valid election" has been held. *Id.* § 159(c)(3). The Board enforces this one-year time bar "from the date of certification rather than the date of election." *Brooks v. NLRB*, 348 U.S. 96, 99, 101–02, 104 (1954) (upholding the Board's rule because it applies "only to the period during which a second election is impossible" under section 9(c)(3)).

When Congress establishes a legal requirement and provides a single exception, the most natural interpretation is that an agency cannot create additional exceptions to the statutory rule. *See Beverly Health & Rehab. Servs., Inc. v. NLRB*, 317 F.3d 316, 321 (D.C. Cir. 2003) (holding the Board may not recognize a union's unilateral extension of a notice to strike because "Congress carved out but a single express exception" to the Act's notice requirement, which demands the

consent of both parties). Here, the Act protects employees' freedom of choice through representation by majority rule, and the only circumstance in which a union's majority representation status cannot be challenged is for a limited time after a certified election.[6] *See* 29 U.S.C. §§ 157, 159(a) & (c)(3); *Brooks*, 348 U.S. at 104. The text and structure of these provisions are best read to foreclose the successor bar, which erects an additional limitation on the rule of majority representation unmoored from the Act's provisions regarding the timing of elections and union certification.

The Board's enforcement action against the Hospital further demonstrates how application of the successor bar contravenes the Act. The Board's central charge is that the Hospital violated section 8(a)(5) by withdrawing recognition and refusing to bargain with the Union. But an employer has a duty to bargain with a union only if the union represents a majority of its employees. 29 U.S.C. §§ 158(a)(5), 159(a); *see also NLRB v. Loc. Union No. 103, Int'l Ass'n of Bridge, Structural & Ornamental Iron Workers, AFL-CIO*, 434 U.S. 335, 346 (1978) (holding that section 8(a)(5)'s cross-reference to section 9(a) limits an employer's bargaining obligation to "a *majority* representative"). Ordinarily, the Hospital would be allowed to defend against the Board's charge by demonstrating the Union lacks majority support. *See, e.g.*, *Pac. Coast Supply*, 801 F.3d at 325–26 (explaining an employer may "withdraw

---

[6] The Board argues the Hospital "is jurisdictionally barred" from relying on section 9(c)(3) of the Act because the Hospital did not cite that provision before the Board. *See* 29 U.S.C. § 160(e) (barring courts from considering an "objection that has not been urged before the Board, its member, agent, or agency"). There is no dispute, however, that in the Board proceedings the Hospital raised its statutory objection to the successor bar. To properly address that preserved legal challenge, we must consider all relevant provisions of the Act.

recognition unilaterally" if it "can prove that [the] incumbent union has, in fact, lost majority support") (cleaned up).

In the proceedings before the Board, the Hospital provided evidence that most of its employees rejected the Union and that the employees of one bargaining unit unanimously denounced the Union as their representative. The Board, however, refused to even consider the Hospital's evidence because under the successor bar an incumbent union's representation may not be challenged for up to one year. But if the Union in fact lacked majority support, the Hospital's refusal to bargain would have been lawful. The successor bar compelled the finding of an unfair labor practice, even when the Hospital's evidence may have established that it had no obligation under the Act to recognize and bargain with the Union.

Under the successor bar, when a new employer acquires a business, an incumbent union is protected from any representation challenge for up to one year. The bar thus compels the successor employer to recognize and bargain with the incumbent union, even if it lacks majority support. That rule is inconsistent with the Act's protection of employee freedom of choice and representation by majority rule. The Board therefore contravened the Act when it refused to consider the Hospital's evidence challenging the Union's majority status and ordered the Hospital to collectively bargain with the Union.

B.

The Board attempts to justify the successor bar as consistent with its policymaking authority and the purposes of the Act. But these arguments cannot overcome the specific requirements of the Act.

First, the Board argues that the successor bar falls within "its authority to create national labor policy." NLRB Suppl. Br.

8. The Board, however, cites no statutory provision to support this claim. When pressed at oral argument, the Board relied on its general authority to prevent unfair labor practices under sections 8 and 10 of the Act. But as already explained, these provisions are expressly qualified by sections 7 and 9, which guarantee employees both freedom of choice and representation by a union with majority support. 29 U.S.C. §§ 160(a), 158(a)(1) & (5); *see id.* §§ 157, 159(a). Those guarantees mean that employers have no obligation to bargain with a union that has lost majority support. The Board's general authority to enforce unfair labor practices cannot justify suspending statutory protections in the collective bargaining relationship.

The Board also attempts to rely on Supreme Court precedent upholding other Board policies as reasonable. *See, e.g.*, *Fall River*, 482 U.S. at 42; *Ford Motor Co. v. NLRB*, 441 U.S. 488, 495 (1979). These cases, however, stand for the unremarkable proposition, recognized by *Loper Bright*, that within the boundaries of the Board's delegated authority, its policy decisions are reviewed for reasonableness. 144 S. Ct. at 2263. But the successor bar's reasonableness as a policy has nothing to do with whether the Act delegates discretionary authority to the Board to suspend sections 7 and 9 when one business takes over another.

As to the scope of the Board's delegated authority, the Supreme Court has long maintained that "the Board must conform" to the Act and that "all questions" of the Board's "statutory authority[] are open to examination by the court[s]." *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 47 (1937); *see also NLRB v. Fin. Inst. Emps. of Am., Loc. 1182, AFL-CIO* ("*Financial Institution*"), 475 U.S. 192, 201–02 (1986) (similar). The cases cited by the Board likewise acknowledge that its rules must be "consistent with the Act." *Fall River*, 482

U.S. at 42; *see also Ford Motor*, 441 U.S. at 497 (similar). The fact that other Board policies have been found both lawful and reasonable tells us nothing about whether the Board has legal authority to impose the successor bar.

Second, the Board maintains that the successor bar promotes the Act's general purposes of "industrial peace and stability" by giving bargaining relationships between successor employers and incumbent unions "a fair chance to succeed." NLRB Suppl. Br. 6–11, 13–14 (cleaned up). While promoting labor stability is one of several stated purposes, the Act mitigates industrial strife through specific provisions, including those that "protect[] the exercise by workers of full freedom of association, self-organization, and designation of representatives of their own choosing." 29 U.S.C. § 151; *see also Loc. Lodge No. 1424, Int'l Ass'n of Machinists, AFL-CIO v. NLRB*, 362 U.S. 411, 428–29 (1960) (rejecting the Board's attempt to justify a rule as a reasonable balancing of "employee freedom of choice" against "industrial peace" because "the accommodation between these competing factors has already been made by Congress") (cleaned up); *Financial Institution*, 475 U.S. at 202–04 (similar).

In conflict with these purposes and the directives of sections 7 and 9, the successor bar entrenches incumbent unions for up to one year. Even if an incumbent union lacks majority support, an employer must recognize and bargain with that union on pain of liability for an unfair labor practice. But the Board has no authority to favor incumbent unions at the expense of the statutory protections for employees, because the Act "confers rights only on *employees,* not on unions." *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 532 (1992). General concerns for industrial stability cannot save the lawfulness of the successor bar, which is really a rule of *union* stability that

comes at the expense of employee freedom of association and self-organization.

Third, the Board relies on *Auciello Iron Works, Inc. v. NLRB*, 517 U.S. 781 (1996), for the proposition that it has broad authority to impose irrebuttable presumptions "limiting an employer's ability to withdraw" recognition from a union. NLRB Suppl. Br. 6–7. *Auciello* affirmed a Board decision that relied on its so-called "contract bar," under which the Board presumes that a union maintains majority support during and after the term of a collective bargaining agreement. 517 U.S. at 786. But the Court addressed only the contract bar's application as a presumption that allowed employees to challenge a union's representation status through an election petition and that could be overcome by employers in multiple ways, including through evidence demonstrating the union "in fact lacked majority support" when the collective bargaining agreement was executed. *Id.* at 784 n.2, 790; *see also id.* at 789 n.6. By contrast, the successor bar is never rebuttable, and as the Board has stressed, it protects incumbent unions from "*any* challenge" for up to one year. *UGL-UNICCO*, 357 NLRB at 803 (emphasis added). The Court's narrow decision in *Auciello* does not recognize the broad authority asserted by the Board, and therefore it cannot save the successor bar, which categorically suspends the Act's protections.

Finally, the Board reiterates the argument adopted by *Hospital Menonita I* that the successor bar saves "litigation time and expense" because it is irrebuttable. NLRB Suppl. Br. 11 (quoting 94 F.4th at 15). But as the Supreme Court has admonished, the Act's protection of "[i]ndividual and collective employee rights may not be trampled upon merely because it is inconvenient to avoid doing so." *Garment Workers*, 366 U.S. at 740. Efficiency concerns cannot create regulatory authority for the Board.

* * *

On remand after *Loper Bright*, this court must independently evaluate whether the Board has statutory authority to impose the successor bar. We conclude the bar suspends the Act's guarantees of employee freedom and majority rule in collective bargaining, and the Board lacks authority to impose such a rule. Moreover, the Board's general policy goals, however "reasonable," cannot overcome its lack of statutory authority.

When defending against unfair labor practice charges, the Hospital was entitled to put forward evidence that the Union did not have the support of a majority of the Hospital's employees. Accordingly, we grant the Hospital's petition for review, deny the Board's cross-petition for enforcement, and remand for further proceedings consistent with this opinion.

*So ordered.*

RANDOLPH, *Senior Circuit Judge*, dissenting:

The Supreme Court vacated the original panel's judgment and remanded the case for "further consideration in light of *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024)." *Hospital Menonita de Guayama, Inc. v. NLRB*, 145 S. Ct. 982 (2024).[1]

*Loper Bright* overruled *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).[2]

---

[1] When the case returned to our court, it was heard by a different panel. It should have instead been retained by the original panel—Senior Judge Edwards, who wrote the opinion, Judge Henderson, and Judge Katsas. *See* D.C. Cir. Handbook of Practice & Internal Procedures 49 (2025) ("When the Supreme Court remands a case to this Court for further proceedings, the case is assigned to the same panel that previously considered it."). Compliance with our rule is especially appropriate in this case. Resolution of the Supreme Court's remand order turns on whether *Loper Bright* affected the original panel's decision. Needless to say, the original panel would best know the answer to that question.

[2] There is an error in the Supreme Court's analysis in *Loper Bright*. Much of the Court's reasoning (and a part of Justice Gorsuch's concurrence) is devoted to criticizing the *Chevron* opinion for ignoring section 706 of the Administrative Procedure Act, 5 U.S.C. § 706. *See, e.g.*, 603 U.S. at 397-400, 411-12; *id.* at 428 (Gorsuch, J., concurring). The Court's critique is unfounded. It is unfounded because section 706 of the APA did not apply to judicial review of the EPA rule at issue in *Chevron.* Section 706 did not apply because *Chevron* was not an APA review case. The Clean Air Act superseded the APA: "The provisions of section 553 through 557 and section 706 of Title 5 [the APA] shall not, except as expressly provided in this subsection, apply to actions to which this subsection applies." 42 U.S.C. § 7607(d)(1). The problem the Court identified in *Loper Bright* was not with *Chevron* itself, but with courts, including the Supreme Court, indiscriminately adopting the *Chevron* formula in later cases in which section 706 of the APA did apply.

Compliance with the Supreme Court's order necessarily requires our court to be precise about the basis for the Court's overruling of *Chevron*. An accurate description is that *Loper Bright* rejected the view that courts may treat statutory ambiguity as an implicit delegation of discretionary interpretive authority to an agency. 603 U.S. at 399-400; *see* Thomas W. Merrill, *The Demise of Deference—and the Rise of Delegation to Interpret?*, 138 HARV. L. REV. 227, 265 (2024).

It follows that we must determine whether the original panel relied on statutory ambiguity as conferring discretionary interpretive authority on the NLRB—that is, whether it upheld the Board's successor-bar rule by applying the *Chevron* framework.[3] The answer to that question is obvious:

---

[3] Although the successor-bar rule has gone through several iterations, *see* ROBERT A. GORMAN & MATTHEW W. FINKIN, BASIC TEXT ON LABOR LAW: UNIONIZATION AND COLLECTIVE BARGAINING 794-95 (2d ed. 2004), its current form has been in effect for a decade and a half. It has also been sustained by the First Circuit, the only other court of appeals to pass on its validity. *See NLRB v. Lily Transportation Corp.*, 853 F.3d 31 (1st Cir. 2017). Congressional acquiescence to a circuit-level construction is, of course, an imperfect indicator of legislative approval. *See* William N. Eskridge, Jr., *Overriding Supreme Court Statutory Interpretation Decisions*, 101 YALE L.J. 331, 416 (1991) (observing that although Congress showed "impressive" engagement with Supreme Court decisions, it showed "unimpressive knowledge of and response to the far more numerous lower federal court statutory interpretation decisions"). But the inference is stronger when, as here, committees in both Houses have examined the very rule at issue and Congress has declined to alter it. *See Culture of Union Favoritism: Recent Actions of the National Labor Relations Board Hearing Before the H. Comm. on Education and the Workforce*, 112th Cong. 24

the original panel did no such thing. Yet the majority neither asks nor answers this essential question.

The majority seems to assume that, in the period between *Chevron* in 1984 and *Loper Bright* in 2024, any court that deferred to a substantive NLRB rule must have done so in reliance on *Chevron*, even if the court—like the original panel here—neither cited *Chevron* nor invoked its two-step formula. That premise is mistaken. *Chevron* supplied one theory of agency deference: a presumption that statutory ambiguity implicitly delegated interpretive authority to an agency. But it did not displace, much less create, the distinct principle that the NLRA itself entrusts the Board with substantial discretion to develop and implement national labor policy.

Three post-*Chevron* decisions of the Supreme Court involving the NLRB illustrate the majority's analytical error. In *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 42 (1987), *NLRB v. Curtin Matheson Sci., Inc.*, 494 U.S. 775 (1990), and *Allentown Mack Sales & Service, Inc. v. NLRB*, 522 U.S. 359 (1998), the Court addressed substantive Board rules after *Chevron* had been decided. Yet those opinions neither cited *Chevron* nor applied its deference formula. Instead, they rested on the NLRA-specific

---

(2011); *Examining Proposals to Strengthen the National Labor Relations Act Hearing Before the H. Subcomm. on Health, Employment, Labor, and Pensions of the H. Comm. on Education and the Workforce*, 112th Cong. 16 (2012); *Protecting Workers' Right to Organize: The Need for Labor Law Reform Hearing Before the H. Subcomm. on Health, Employment, Labor, and Pensions of the H. Comm. on Education and Labor*, 116th Cong. 19 (2019); *Defending the Right of Workers to Organize Unions Free from Illegal Corporate Union-Busting Hearing Before the S. Comm. on Health, Education, Labor, and Pensions*, 118th Cong. 43 (2023).

understanding that Congress gave the Board primary responsibility for making the policy judgments necessary to administer the Act.

In *Fall River*, the Court succinctly stated the governing principle: "If the Board adopts a rule that is rational and consistent with the Act, . . . then the rule is entitled to deference from the courts." 482 U.S. at 42. The original panel faithfully implemented that principle. *See Hospital Menonita de Guayama v. NLRB*, 94 F.4th 1, 13-14 (D.C. Cir. 2024) (*Hospital Menonita I*). The majority ignores it.

*Curtin Matheson*, which the original panel also quoted and relied upon, *see Hospital Menonita I*, 94 F.4th at 5, confirms the same point. The Court there explained that it "ha[d] emphasized often that the NLRB has the primary responsibility for developing and applying national labor policy." *Curtin Matheson*, 494 U.S. at 786. To that end, the Court directed reviewing courts to "uphold a Board rule as long as it is rational and consistent with the [NLRA], even if [the court] would have formulated a different rule had [it] sat on the Board." *Id.* at 787. The majority opinion defies that Supreme Court directive.

*Allentown Mack* is equally telling. In an opinion cited in *Loper Bright* itself, 603 U.S. at 395, Justice Scalia wrote for the Court that "[t]he Board can, of course, forthrightly and explicitly adopt counterfactual evidentiary presumptions (which are in effect substantive rules of law) as a way of furthering particular legal or policy goals—for example, the Board's irrebuttable presumption of majority support for the union during the year following certification." 522 U.S. at 378. The "of course" is notable and inconsistent with the majority's opinion in this case.

*Loper Bright* made crystal clear that, in overruling *Chevron*, the Court was not sweeping away these preexisting grounds for recognizing agency discretion. *See* 603 U.S. at 394-395, 404. To the contrary, the Court took pains to distinguish *Chevron*'s broad presumption from circumstances in which Congress has actually conferred discretion on an agency. As relevant here, *Loper Bright* reaffirmed that Congress may confer such authority by "empower[ing] an agency to prescribe rules to 'fill up the details' of a statutory scheme . . .." *Id.* (alteration in original) (quoting *Wayman v. Southard*, 23 U.S. (10 Wheat.) 1, 43 (1825)). The following Term, the Court reiterated that "when an agency exercises discretion granted by a statute . . . a court asks not whether it agrees with the agency decision, but rather only whether the agency action was reasonable and reasonably explained." *Seven Cnty. Infrastructure Coal. v. Eagle County*, 605 U.S. 168, 179-80 (2025).

This distinction has deep roots. A decade before *Chevron*, Judge Friendly recognized that when Congress entrusts an agency with the responsibility to formulate and implement national policy, courts may reasonably infer a congressional intent to afford that agency discretion in executing that charge. *Pittston Stevedoring Corp. v. Dellaventura*, 544 F.2d 35, 49 (2d Cir. 1976). That inference depended on the particular statutory context. *See id.* at 49-50. When the statute conferred such latitude, courts gave effect to that choice. *Process Gas Consumers Grp. v. U.S. Dep't of Agric.*, 694 F.2d 778, 791 (D.C. Cir. 1982) (en banc). *Chevron*, however, collapsed that disciplined, "statute-by-statute evaluation" into what Justice Scalia described as "an across-the-board presumption." Antonin Scalia, *Judicial Deference to Administrative Interpretations of Law*, 1989 Duke L.J. 511, 516.

In a later reflection on Judge Friendly's jurisprudence, I suggested that he would have resisted the reflexive deference that emerged in *Chevron*. *See* A. Raymond Randolph, *Administrative Law and the Legacy of Henry J. Friendly*, 74 N.Y.U. L. REV. 1, 16 (1999). I anticipated that the Supreme Court might one day correct course by reaffirming Judge Friendly's more disciplined conception in which any discretionary latitude afforded an agency must derive from a statute-specific inquiry. *Id.*

*Loper Bright* marks that correction. The Court rejected *Chevron*'s across-the-board presumption, under which ambiguity itself served as a proxy for delegation. *Loper Bright*, 603 U.S. at 399-400. But it preserved the distinct principle that Congress may confer discretionary authority on agencies in particular statutory schemes. *Id.* at 394-96. The proper inquiry is not whether the statute is ambiguous, but whether "the best reading of a statute is that it delegates discretionary authority to an agency." *Id.* at 395.

The NLRA exemplifies that distinction. By entrusting the Board with "the primary responsibility for developing and applying national labor policy," the statute assigns the Board a broad measure of policymaking discretion that long predates *Chevron* and survives *Chevron*'s repudiation. *See, e.g., Curtin Matheson*, 494 U.S. at 786. The majority misses that point in its reading of the original panel's opinion. It seizes on the original panel's statement that it would "bow to reasoned Board decisionmaking" as a confession that *Chevron* supplied the basis for decision. Maj. Op. at 9 (quoting *Hospital Menonita I*, 94 F.4th at 15). But that only begs the question *why* the panel gave weight to the Board's judgment. Did it do so because it treated statutory ambiguity as an implicit delegation of interpretive authority to the Board—the now-

discarded *Chevron* view? Or because it recognized that the NLRA itself entrusts this category of judgment to the Board?

The original panel's opinion points unmistakably to the latter. The panel did not invoke the framework developed in *Chevron*'s wake. Indeed, it did not so much as cite *Chevron*. The only reference to *Chevron* appeared not in the majority opinion, but in Judge Katsas's concurring opinion. *See Hospital Menonita I*, 94 F.4th at 17 (Katsas, J., concurring). The majority now presses that separate reference into service as a basis for recharacterizing the majority opinion. *See* Maj. Op. at 9 (citing *Hospital Menonita I*, 94 F.4th at 17 (Katsas, J., concurring)). But it goes without saying that "the meaning of a majority opinion is to be found within the opinion itself," not "the gloss that an individual [judge] chooses to place upon it." *McKoy v. North Carolina*, 494 U.S. 433, 448 (1990) (Blackmun, J., concurring). Moreover, Judge Katsas—citing the original decision in this case—acknowledged that "it would blink reality to suppose that *Loper Bright* will eliminate the NLRB's ability to conduct policymaking through adjudication under *Chenery II*." *Harris v. Bessent*, 160 F.4th 1235, 1252 (D.C. Cir. 2025).

Rather than *Chevron*'s two-step formula for resolving statutory ambiguity, the original panel relied on the Board's discretionary authority under the NLRA. The panel put it this way: "Because 'the NLRB has the primary responsibility for developing and applying national labor policy,' the Supreme Court has required that reviewing courts 'accord[] Board rules considerable deference.'" *Hospital Menonita I*, 94 F.4th at 14 (alteration in original) (quoting *Curtin Matheson*, 494 U.S. at 786).

The majority resists this reading by focusing on the original panel's citation to *NLRB v. Lily Transportation*

*Corp.*, 853 F.3d 31 (1st Cir. 2017)—the only other court of appeals decision to consider the merits of the Board's successor-bar rule and one that expressly applied the *Chevron* framework in sustaining it. *See* Maj. Op. at 8-9. From this, the majority concludes that the panel incorporated *Lily Transportation* wholesale and thereby necessarily grounded its analysis in *Chevron*. *Id.* That conclusion is not correct. The original panel independently determined—without referring either to *Lily Transportation* or *Chevron*—that the NLRA confers policymaking authority on the Board. *Hospital Menonita I*, 94 F.4th at 5.

The panel turned to *Lily Transportation* only afterward, and only for the more limited proposition that the Board's successor-bar rule fell "within the scope of reasoned interpretation [of the NLRA]." *Hospital Menonita I*, 94 F.4th at 14 (quoting *Lily Transportation*, 853 F.3d at 38). Thus, although the First Circuit in *Lily Transportation* framed its analysis in terms of *Chevron*, the panel here followed the Supreme Court's analysis set forth in *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. at 42, and other Supreme Court post-*Chevron* NLRB decisions, none of which relied upon or even cited *Chevron*.

It follows that the original panel's decision should be reinstated. Our court has long recognized that "[w]hen the Supreme Court vacates a judgment of this court without addressing the merits of a particular holding in the panel opinion, that holding 'continue[s] to have precedential weight, and in the absence of contrary authority, we do not disturb' it." *United States v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006) (last alteration in original) (quoting *Action Alliance of Senior Citizens of Greater Philadelphia v. Sullivan*, 930 F.2d 77, 83 (D.C. Cir. 1991)); *see also Hopkins v. Price Waterhouse*, 920 F.2d 967, 975 & n.5 (D.C. Cir. 1990). The

Supreme Court did not reject, criticize, or even discuss the reasoning of *Hospital Menonita I*. It simply directed us to give the case "further consideration in light of *Loper Bright*." *Hospital Menonita*, 145 S. Ct. at 982. As should be clear, *Loper Bright* provides no authority for my colleagues to revisit and overrule the original panel's decision.