No. 22-1163 (Consolidated with No. 22-1180)

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

HOSPITAL MENONITA DE GUAYAMA, INC.,

Petitioner/Cross-Respondent,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent/Cross Petitioner.

---

**ON REMAND FROM**
**THE SUPREME COURT OF THE UNITED STATES**

---

# PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENT'S PETITION FOR REHEARING *EN BANC*

---

*s/Ángel Muñoz Noya, Esq.*
Bar No. 46830
E-Mail: amunoz@sbsmnlaw.com
**SÁNCHEZ-BETANCES, SIFRE & MUÑOZ-NOYA**
33 Calle Bolivia, Suite 500
San Juan, Puerto Rico 00917
Telephone: (787) 756-7880
Facsimile: (787) 753-6580

*s/Patrick M. Muldowney, Esq.*
Patrick M. Muldowney, Esq.
Florida Bar No. 978396
E-Mail: pmuldowney@bakerlaw.com
Meagan L. Martin, Esq.
Florida Bar No. 089657
E-Mail: mmartin@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

## TABLE OF CONTENTS

**Headings** **Page(s)**

TABLE OF AUTHORITIES ........ iii

GLOSSARY ........ v

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. THE BOARD IS NOT EXEMPT FROM *LOPER BRIGHT*'S MANDATE.. 3

A. *Menonita II* Employed the Appropriate Standard of Review. ........ 4

B. The Board is not Entitled to Special Deference. ........ 7

C. The *Menonita II* Decision Correctly Determined the Board Exceeded its Statutory Powers. ........ 10

II. IN LIGHT OF THE SUPREME COURT'S VACATUR, *MENONITA I* HAS NO PRECEDENTIAL VALUE. ........ 13

CONCLUSION ........ 15

CERTIFICATE OF COMPLIANCE ........ 17

CERTIFICATE OF SERVICE ........ 18

CORPORATE DISCLOSURE STATEMENT ........ 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hosp. Menonita de Guayama, Inc. v. N.L.R.B.*,
145 S. Ct. 982 (2024) ....................2, 5

*Hosp. Menonita De Guayama, Inc. v. N.L.R.B.*,
183 F.4th 745 (D.C. Cir. 2026).................... 1, 2, 4, 5, 6, 7, 8, 11, 12, 13

*Hosp. Menonita de Guayama, Inc. v. N.L.R.B.*,
94 F.4th 1 (D.C. Cir. 2024)....................5, 8, 14

*Int'l Longshore & Warehouse Union v. N.L.R.B.*,
No. 23-632, 2026 WL 2440079 (9th Cir. Aug. 20, 2026)....................9

*Landmark Intern. Trucks*, *Inc. v. N.L.R.B.*,
699 F.2d 815 (6th Cir. 1983) ....................14

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024).................... 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16

*Marbury v. Madison*,
5 U.S. 137, 2 L. Ed. 60 (1803)....................9, 10

*N.L.R.B. v. Hearst Publications*,
322 U.S. 111 (1944)....................7, 8

*N.L.R.B. v. Lily Transp. Corp.*,
853 F. 3d 31 (1st Cir. 2017)....................5, 6, 8, 14

*N.L.R.B. v. Starbucks Corp.*,
159 F.4th 455 (6th Cir. 2025) ....................9

*Nat'l Fed'n of Indep. Bus. v. OSHA*,
595 U.S. 109 (2022)....................1

*Siren Retail Corp. v. N.L.R.B..*,
__ F.4th__, 2026 WL 2588722 (2d Cir. Sept. 2, 2026)....................9

*U.S. v. Adewani*,
467 F.3d 1340 (D.C. Cir. 2006) .......... 15

*Universal Prot. Servs., LLC V. N.L.R.B.*,
No. 24-11150, 2026 WL 1194880 (11th Cir. May 1, 2026) .......... 9

**Statutes**

5 U.S.C. § 706 .......... 6, 8, 10

29 U.S.C. § 151 .......... 2

29 U.S.C. § 157 .......... 6, 10

29 U.S.C. § 158 .......... 6

29 U.S.C. § 159 .......... 6

29 U.S.C. § 160 .......... 6, 9

# GLOSSARY

| Term | Abbreviations |
|---|---|
| Administrative Procedure Act | APA |
| Hospital Menonita de Guayama, Inc. | Petitioner |
| Hospital Menonita de Guayama | Hospital |
| *Hosp. Menonita de Guayama, Inc. v. N.L.R.B.*, 94 F.4th 1 (D.C. Cir. 2024) | *Menonita I* |
| *Hosp. Menonita De Guayama, Inc. v. N.L.R.B.*, 183 F.4th 745 (D.C. Cir. 2026) | *Menonita II* |
| National Labor Relations Act (29 U.S.C. §151 *et seq.*) | NLRA or Act |
| National Labor Relations Board | NLRB or Board |
| Petition for Rehearing En Banc on Behalf of the National Labor Relations Board, filed September 1, 2026 | Petition or Pet. |
| Unidad Laboral de Enfermeras(os) y Empleados de la Salud | Union |

# INTRODUCTION

On remand from the Supreme Court of the United States, this Court concluded the Board lacked the statutory authority to impose the "successor bar"—which required acquiring businesses to recognize and bargain with incumbent unions for up to one year, regardless of whether the incumbent union in fact enjoyed majority status—since it "suspends the Act's guarantees of employee freedom and majority rule in collective bargaining." *Hosp. Menonita De Guayama, Inc. v. N.L.R.B.*, 183 F.4th 745, 759 (D.C. Cir. 2026) ("*Menonita II"*). The Court based this conclusion upon the Supreme Court's decision in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 391-92 (2024), which rejected judicial deference to agencies regarding their interpretations of law. *Menonita II* therefore remanded the matter to the Board, which had applied the successor bar and refused to consider the Hospital's evidence that the Union no longer represented a majority of the employees at issue, for further proceedings consistent with its opinion. 183 F.4th at 759. Despite this, the Board continues to ask this Court to defer to the Board's interpretation of its own authority under the NLRA. Based upon *Loper Bright*, this Court cannot do so.

As an administrative agency, the Board's authority is limited to enforcing (not creating) *the* law (not the Board's so-called "law"), within the parameters delegated by Congress. *Nat'l Fed'n of Indep. Bus. v. OSHA*, 595 U.S. 109, 117 (2022) ("Administrative agencies are creatures of statute. They accordingly possess only

the authority that Congress has provided.”). Despite this, the Board continues claiming unfettered authority to create and interpret legal doctrines, such as the successor bar, under the guise of developing[1] and enforcing national labor policy. *See* Pet. 5, 7, 9. *Loper Bright* simply clarified what should not have needed clarification: That such claims of authority by administrative agencies are unfounded and antithetical to both the APA and the Constitution’s system of checks and balances. *Loper Bright Enters*, 603 U.S. at 391-92; *see also id.* at 413-16 (Thomas, J., concurring).

It is with *Loper Bright*, and not unhindered deference to administrative agencies, in mind that the *Menonita II* panel reviewed the Board’s successor bar, which has no basis in the statute the Board was created to enforce. This is exactly what the Supreme Court mandated when it granted the Hospital’s petition for writ of certiorari, vacated the prior panel’s (“*Menonita I*”) judgment, and remanded the matter for “further consideration in light of *Loper Bright*.” *Hosp. Menonita de Guayama, Inc. v. N.L.R.B.*, 145 S. Ct. 982 (2024). Notwithstanding the Supreme Court’s remand, the Board now asks this Court to ignore the Supreme Court’s

[1] Even the Board’s claimed right to *develop* national labor policy is nowhere to be found in the Act. Rather, the Act has already declared what the national labor policy is. 29 U.S.C. § 151. And, the successor bar cannot be reconciled with it, as tethering employees to a union they do not support neither “encourage[es] the practice and procedure of collective bargaining,” nor “protect[s] the exercise by workers of full freedom of association, self-organization, and designation of representation of their own choosing.” *See id*.

directive and in essence reinstate *Menonita I,* which improperly deferred to the Board's claimed authority to create and interpret legal doctrines that can then be imposed on private entities without the constitutional or procedural restraints of judicial or congressional oversight.

Because the Supreme Court rejected the deference accorded in *Menonita I*, this Court must decline the Board's invitation to reinstate that decision and deny its Petition.[2]

## ARGUMENT

### I. THE BOARD IS NOT EXEMPT FROM *LOPER BRIGHT*'S MANDATE.

Under *Loper Bright*, which reaffirmed the judiciary's role in evaluating agency action, courts must "independently interpret the statute and effectuate the will of Congress subject to constitutional limits" by "recognizing constitutional delegations, 'fix[ing] the boundaries of [the] delegated authority,' and ensuring the agency has engaged in 'reasoned decisionmaking' within those boundaries." *Loper Bright*, 603 U.S. at 395-96 (citations and internal quotations omitted; alterations in original). Despite this clear command, the Board continues to claim that courts must

[2] The Board attempts to threaten the Court by claiming *Menonita II* "risks opening the floodgates to a slew of litigation seeking judicial vetoes of established Board policies...." Pet. 8. This apocalyptic—and apocryphal—argument, seeks to evade the constitutionally defined roles of the Board, Congress, and the courts (as discussed below).

give "considerable deference" to the Board's construction of labor policy, subject only to "limited judicial review." Pet. 7-9. But *Loper Bright* provides no such exemption for the Board.[3]

*Loper Bright* did not change the standard of review; it corrected the practice of deferring to administrative agencies, particularly when statutory language would require a different result. *Loper Bright*, 603 U.S. at 412. It reiterated the requirement that courts, not administrative agencies, interpret the law, and Congress, not administrative agencies, creates the law. *See id.* at 390-92. The Board purports to usurp the roles of the courts and Congress by claiming it has the authority to both make and interpret law. It does not.

### A. *Menonita II* Employed the Appropriate Standard of Review.

After *Loper Bright*, courts can no longer permit the Board to determine the bounds of its own authority. *Loper Bright*, 603 U.S. at 401. This determination now indisputably falls, as it always should have, within the sound discretion of the courts. *Id.* Indeed, the "very point of the traditional tools of statutory construction—the tools courts use every day—is to resolve statutory ambiguities. That is no less true when

[3] The *Menonita II* panel addressed the Board's argument that the "court must defer to all reasonable labor policies adopted by the Board, including the successor bar," indicating the reasonableness of the policy is inapposite when, as here, the agency does not have the authority to enact it. 183 F.4th at 754 ("But the Hospital's challenge is not about the reasonableness of the successor bar as a policy judgment. Rather, the Hospital has maintained that the successor bar is inconsistent with the Act and therefore the Board has no statutory authority to impose it.").

the ambiguity is about the scope of an agency's own power—perhaps the occasion on which abdication in favor of the agency is *least* appropriate." *Id.* (emphasis in original).

The *Menonita II* panel considered Petitioner's statutory challenge of the Board's successor bar in light of *Loper Bright*, as required by the Supreme Court. *Menonita II*, 183 F.4th 745 at 754 ("[Petitioner] raised a statutory challenge to the successor bar, namely that the bar contravenes the Act, and the Board therefore has no statutory authority to impose it."); *Hosp. Menonita de Guayama, Inc. v. N.L.R.B.*, 145 S. Ct. 982 (2024). In doing so, the *Menonita II* panel properly determined it "must resolve this challenge by independently determining whether the successor bar is within the Board's statutory authority." 183 F.4th at 754 (D.C. Cir. 2026).

As noted in *Menonita II*, "[r]esolving a legal question by deferring to the Board is inconsistent with *Loper Bright*'s directive for courts to 'police the outer statutory boundaries' of an agency's delegated authority." 183 F.4th at 754. The *Menonita I* panel, which determined it "is not the role of the court to second-guess the Board" when it has "reasonably justified" a change in policy, improperly upheld the Board's interpretation and application of the successor bar—a Board-created legal doctrine. *Hosp. Menonita de Guayama, Inc. v. N.L.R.B.*, 94 F.4th 1, 15 (D.C. Cir. 2024) (citing *N.L.R.B. v. Lily Transp. Corp.*, 853 F. 3d 31, 38 (1st Cir. 2017)). The APA, however, "specifies that courts, not agencies, will decide '*all* relevant

questions of law' arising on review of agency action," and "set aside any such action inconsistent with the law as they interpret it." *Loper Bright*, 603 U.S. at 392 (emphasis in original); 5 U.S.C. § 706. Nothing in the NLRA gives the Board the broad authority it claims, and the Board, to date, has failed to demonstrate otherwise.

The deference afforded to the NLRB by *Menonita I* does not comport with *Loper Bright's* instruction pertaining to agency discretion. The Board, attempting to avoid judicial review of its actions, endeavors to couch the successor bar as a policy decision within its discretion. Pet. 8-9. But, the successor bar is not a policy decision: it is a "legal rule." *Lily Transp. Corp.*, 853 F.3d at 39. The Board's argument was considered and rejected by *Menonita II*, which determined the Board's attempt to justify "the successor bar as consistent with its policymaking authority and the purposes of the Act … cannot overcome the specific requirements of the Act." 183 F.4th at 757. Noting the "general authority to prevent unfair labor practices" under the Act, was "expressly qualified by sections 7 and 9, which guarantee employees both freedom of choice and representation by a union with majority support," *Menonita II* concluded the "Board's general authority to enforce unfair labor practices cannot justify suspending statutory protections in the collective bargaining relationship." *Id.* (citing 29 U.S.C. §§ 160(a), 158(a)(1) & (5), 157, and 159(a)).

The Board does not point to any portion of the NLRA granting it the discretion it claims to possess and, even if it could, there is no reading of the statute that would

give the Board the discretion to create policy that contravenes the Act. The Board cannot escape *Loper Bright's* command by recasting statutorily unauthorized agency action as statutorily permissible policymaking.

**B. <u>The Board is not Entitled to Special Deference.</u>**

The Board claims it is entitled to a different standard than other administrative agencies based on the traditional deference it was provided. Both *Loper Bright* and the *Menonita II* panel addressed the deference traditionally afforded to the Board, and neither suggested the Board is somehow permitted a different level of review or special deference.

*Loper Bright* touched on traditional deference to administrative agencies, and specifically discussed the deference provided to the NLRB in its analysis of *N.L.R.B. v. Hearst Publications*, 322 U.S. 111 (1944). *Loper Bright*, 603 U.S. at 388-91. Notably, deferential review of NLRB decisions "was cabined to factbound determinations." *Id.* at 389 (evaluating the judicial review applied in *Hearst Publication*). The Supreme Court noted that *Hearst* had not "purported to refashion the longstanding judicial approach to questions of law" and stated that, as far back as *Hearst*, the Court "proclaimed that '[u]ndoubtedly questions of statutory interpretation … are for the courts to resolve, giving appropriate weight to the judgment of those whose special duty is to administer the questioned statute.'" *Id.* (quoting *Hearst Publications*, 322 U.S. at 130-31). Notably, "[n]othing in the New

Deal era or before it thus resembled the deference rule the Court would begin applying decades later to all varieties of agency interpretations of statutes. Instead, just … two [years] after *Hearst*, Congress codified the opposite rule: the traditional understanding that *courts* must 'decide all relevant questions of law.'" *Id.* at 390 (citing 5 U.S.C. § 706) (emphasis in original).

Here, the *Menonita II* panel was tasked with deciding the relevant question of law: whether the Board's successor bar is inconsistent with the Act. 183 F.4th at 755. In determining the successor bar contradicts the NLRA, the *Menonita II* panel independently assessed the statute. *Id.* at 755-57. In contrast, the *Menonita I* panel impermissibly deferred to the Board's purportedly "reasoned interpretation *of the NLRA*." 94 F.4th at 14 (citation modified).[4] But the Board does not have the authority to interpret the NLRA without judicial review. The deference provided to the Board in the *Menonita I* opinion is the sort of judicial abdication *Loper Bright* soundly rejected. *Loper Bright*, 603 U.S. at 391-92 ("The APA thus codifies for agency cases

[4] The Board's argument that *Menonita I* did not rely on impermissible *Chevron* deference is contrary to the opinion's language. The decision repeatedly cited *Lily Transportation*, which expressly employed *Chevron* deference, and quoted a portion of that case explicitly relying upon *Chevron*. *Compare Menonita I,* 94 F.4th at 14 ("However, the First Circuit handily upheld the successor bar, seeing 'no cause to doubt that the Board's position … is within the scope of reasoned interpretation [of the NLRA].'" (alterations in original)), *with Lily Transp. Corp.*, 853 F.3d 31, 38 (1st Cir. 2017) ("We see no cause to doubt that the Board's position taken here is within the scope of reasoned interpretation and *thus subject to judicial deference under Chevron*…." (emphasis added)).

the unremarkable, yet elemental proposition reflected by judicial practice dating back to *Marbury*: that courts decide legal questions by applying their own judgment.”).

Despite this clear limitation on its authority to interpret the NLRA, the Board continues to argue it has nearly unrestrained power to create policy and claims a special deference not subject to *de novo* review. *See* Pet. 8-12. As recognized by multiple Circuits in the wake of *Loper Bright*, however, the correct standard employed by courts when reviewing even the Board’s interpretations of law is *de novo*. *Siren Retail Corp. v. N.L.R.B..*, __ F.4th__, 2026 WL 2588722, at *4 (2d Cir. Sept. 2, 2026) (“We review the Board’s legal conclusions … *de novo*. In considering what the law should be in a particular case, it is for us to decide the law.”); *Universal Prot. Servs., LLC V. N.L.R.B.*, No. 24-11150, 2026 WL 1194880, at **5, n.5 (11th Cir. May 1, 2026) (noting “*Loper Bright* instructs us to review legal questions *de novo*” and the “Board’s legal determinations are not binding on this Court”); *N.L.R.B. v. Starbucks Corp.*, 159 F.4th 455, 468 (6th Cir. 2025) (“We review *de novo* the Board’s legal conclusions, including its interpretation of § 10(c).”); *Int'l Longshore & Warehouse Union v. N.L.R.B.*, No. 23-632, 2026 WL 2440079, at *5 (9th Cir. Aug. 20, 2026) (quoting *Loper Bright*, 603 U.S. 369, 412 (2024)) (“We review *de novo* questions of law and ‘exercise [our] independent judgment in deciding whether an agency has acted within its statutory authority.’”).

Despite the Board's arguments, courts are not permitted to accord it deference simply because it was provided in the past. The final arbiters on matters of law are the courts, not administrative agencies. *Loper Bright*, 603 U.S. at 392 ("Since the start of our Republic, courts have 'decide[d] ... questions of law' and 'interpret[ed] constitutional and statutory provisions' by applying their own legal judgment." (citing 5 U.S.C. § 706)); *see also Marbury v. Madison*, 5 U.S. 137, 177, 2 L. Ed. 60 (1803) ("It is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule. If two laws conflict with each other, the courts must decide on the operation of each."). In evaluating the Board's successor bar doctrine, *Menonita II* fulfilled its constitutional role by interpreting the statute and the (lack of) authority granted to the Board to enact the successor bar.

### C. The *Menonita II* Decision Correctly Determined the Board Exceeded its Statutory Powers.

Here, Petitioner challenges the Board's successor bar, which employed an irrebuttable presumption of a union's majority status for six to twelve months following a successor employer's recognition of an existing union, because it contravenes the right of employees found in Section 7 of the Act "to bargain collectively through representatives of their own choosing," and "to refrain from any or all such [collective] activities...." *See* 29 U.S.C. § 157. Under *Loper Bright*, the question to be answered by this Court was: "Does the statute authorize the

challenged agency action?" *Loper Bright*, 603 U.S. at 406–07. *Menonita II* considered the NLRA and determined it did not authorize the successor bar. 183 F.4th at 759 ("We conclude the bar suspends the Act's guarantees of employee freedom and majority rule in collective bargaining, and the Board lacks authority to impose such a rule. Moreover, the Board's general policy goals, however 'reasonable,' cannot overcome its lack of statutory authority.")

While the Board continues to proclaim it is entitled to deference, nowhere does the Board explain why *Loper Bright* would require deference to the Board's *legal* interpretations of the NLRA or, more specifically, Section 7. The Board similarly fails to explain why the specific language of Section 7 should be overshadowed by the Act's general purposes. Instead, the Board suggests that Congress granted it the ability to create legal doctrines and policy without any sort of check on that authority. Pet. 7, 10-12. The Board fails to point to any portion of the NLRA granting it such absolute power. Rather than point to the statute, the Board relies on its self-determined "reasonable construction" of nebulous "broader policies underlying the NLRA." Pet. 12.

*Menonita II* considered the Board's arguments and found they did not comport with the statute the Board was created to enforce. *See* 183 F.4th at 757-58 (addressing the Board's various arguments regarding its purported authority and finding "[g]eneral concerns for industrial stability cannot save the lawfulness of the

successor bar, which is really a rule of *union* stability that comes at the expense of employee freedom of association and self-organization”).

Setting aside the Board’s argument that a court must defer to an administrative agency when interpreting the law, Pet. 10, *Menonita II* determined the Board exceeded its powers and ventured into an area barred by statute when it found the Board’s creation of a successor bar employing an irrebuttable presumption of majority status contravened Section 7 of the NLRA. 183 F.4th at 759 (finding lack of statutory authority for successor bar). Deference is not permitted in these circumstances.

Under *Loper Bright*, an administrative agency can engage in reasoned decision-making within the boundaries of its delegated authority, if any. 603 U.S. at 395-96. To determine whether an agency engaged in reasonable decision-making consistent with its delegated authority, a court must first determine that the authority proclaimed was delegated to the agency. *Menonita II* clearly and correctly determined that the Board’s creation of a legal doctrine that directly contradicted a statutory provision, was not within the bounds of the Board’s delegated authority. 183 F.4th at 759. There is no obligation, therefore, to determine whether the Board engaged in “reasoned decision-making.” It could not have.

## II. IN LIGHT OF THE SUPREME COURT'S VACATUR, *MENONITA I* HAS NO PRECEDENTIAL VALUE.

As stated above, *Menonita II* appropriately considered *Menonita I* in light of *Loper Bright*. The Board attempts to argue that the issue to be considered is whether the successor bar rule is "rational and consistent" with the Act and nonsensically suggests that *Menonita I* is dispositive on this issue. Pet. 15. The Board's position would obviate the Supreme Court's mandate that this Court reconsider its decision with *Loper Bright* in mind.

*Loper Bright* set forth the deference that is to be applied when evaluating agency action. Specifically, courts "must exercise their independent judgment in deciding whether an agency has acted within its statutory authority, as the APA requires." *Loper Bright*, 603 U.S. at 412. Both the APA and the Supreme Court's decision in *Loper Bright* militate against deference to the Board's interpretation of the Act to create a rule of law. *Id.* at 392 (APA "prescribes no deferential standard for courts to employ" in answering legal questions when reviewing agency action).

The only matter before the *Menonita II* panel on remand was the legality of the successor bar. As that issue turns solely on legal analysis of the statute, deference to the Board's interpretation would be inappropriate under *Loper Bright*. "[F]urther consideration in light of *Loper Bright*," therefore, required the *Menonita II* panel to use its independent judgment to analyze the legality of Board's successor bar under the NLRA. *See Menonita II*, 183 F.4th 745 at 754-55 ("In response to the Hospital's

challenge, our dissenting colleague repeatedly makes the unobjectionable observation that the Board may act within its delegated policymaking authority. But courts must ensure that the Board's policies are in fact consistent with its statutory authority, as the cases cited by the dissent confirm. Because *Menonita I* did not independently determine whether the successor bar is consistent with the Act, it does not comport with *Loper Bright* or these older cases." (citation modified)).

Prior to *Menonita I*, only two cases considered the legality of the successor bar in light of Section 7: *N.L.R.B. v. Lily Transp. Corp.*, 853 F.3d 31, 39 (1st Cir. 2017), and *Landmark Intern. Trucks*, *Inc. v. N.L.R.B.*, 699 F.2d 815 (6th Cir. 1983). *Lily Transportation* relied on *Chevron* to find the successor bar lawful. 853 F.3d at 38 ("We see no cause to doubt that the Board's position taken here is within the scope of reasoned interpretation and thus subject to judicial deference under *Chevron*."). *Landmark International*, decided prior to *Chevron*, found an irrebuttable presumption of majority status in successor situations contravened the Act. *Landmark Int'l Trucks, Inc. v. N.L.R.B.*, 699 F.2d 815, 818 (6th Cir. 1983) (finding "no basis" for the Board's holding "that regardless of how long the union has been certified, a successor which 'voluntarily' recognizes the union may not withdraw recognition for a reasonable time, regardless of the fact that it may have reasonable, good faith doubts about the continuing majority status of the union").

The Board's reliance on *Adewani* is misplaced. In that case, this Court found that a vacated judgment still would have precedential value with respect to issues not referenced by the Supreme Court as the basis for vacatur and remand. *U.S. v. Adewani*, 467 F.3d 1340, 1342 (D.C. Cir. 2006). By contrast, as stated above, the Supreme Court directed the D.C. Circuit to reconsider its ruling in light of *Loper Bright*, which instructed courts to abandon deferential review of agencies' interpretations of law. As such, *Menonita I* is a nullity with respect to this issue. There is no question that *Menonita II* properly considered whether the successor bar was within the Board's delegated authority and found that it was not.

In light of the Supreme Court's vacatur of *Menonita I* and requirement that this Court review the matter pursuant to *Loper Bright, Menonita I* has no precedential or persuasive value.

## **CONCLUSION**

The *Menonita II* panel abided by the Supreme Court's directive when it reconsidered whether the Board had the authority to create a successor bar imposing an irrebuttable presumption of majority status in light of *Loper Bright*. The majority opinion issued by the *Menonita II* panel demonstrated that the court fulfilled its obligation by determining whether the agency action (*i.e.*, the creation of the successor bar doctrine) was authorized by the NLRA. The Board's arguments to the contrary are unsupported by the Supreme Court's decision in *Loper Bright*. *En banc*

review of the *Menonita II* panel's decision, therefore, is unnecessary because, by reconsidering the decision in light of *Loper Bright*, the *Menonita II* panel clearly addressed the concerns of the Supreme Court.

Dated: September 17, 2026

Respectfully submitted,

*s/ Patrick M. Muldowney*

Patrick M. Muldowney, Esq.
pmuldowney@bakerlaw.com
Meagan L. Martin, Esq.
mmartin@bakerlaw.com
**BAKER & HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

Ángel Muñoz Noya, Esq.
Bar No. 46830
amunoz@sbsmnlaw.com
**SÁNCHEZ-BETANCES, SIFRE & MUÑOZ-NOYA**
33 Calle Bolivia, Suite 500
San Juan, Puerto Rico 00917
Tel.: 787-756-7880
Fax: 787-753-6580

***Attorneys for Petitioner/Cross-Respondent***

## CERTIFICATE OF COMPLIANCE

Pursuant to Rule 40(d)(3)(A) of the Federal Rules of Appellate Procedure and Circuit Rule 40(b), I hereby certify that the foregoing Response in Opposition to the Board's Petition for Rehearing *En Banc* contains 3,775 words, as counted by a word processing system that includes headings, footnotes, quotations and citations in the count, and therefore is within the word limit set by the Court. I further certify that, pursuant to Rule 40(d)(2), this filing complies with the typeface requirements of Rule 32(a)(5) and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

*s/Patrick M. Muldowney*
Counsel to Petitioner

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing Response in Opposition to the Board's Petition for Rehearing *En Banc* was filed electronically with the Court by using the CM/ECF system on September 17, 2026. I further certify that the foregoing document was served on all parties or their counsel of record through the CM/ECF system.

*s/Patrick M. Muldowney*
Counsel for Petitioner

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1(a), Hospital Menonita de Guayama, Inc., is a non-profit corporation. Hospital Menonita certifies that it has a parent corporation named Mennonite General Hospital, Inc., which is also a non-profit corporation, and no publicly held corporation has a 10% or greatest interest in Hospital Menonita de Guayama, Inc., or Mennonite General Hospital, Inc.

Respectfully submitted,

*s/ Patrick M. Muldowney*

Patrick M. Muldowney, Esq.
pmuldowney@bakerlaw.com
Meagan L. Martin, Esq.
mmartin@bakerlaw.com
**BAKER HOSTETLER LLP**
200 South Orange Avenue, Ste. 2300
P.O. Box 112
Orlando, FL 32802-0112
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

Ángel Muñoz Noya, Esq.
Bar No. 46830
amunoz@sbsmnlaw.com
**SÁNCHEZ-BETANCES, SIFRE & MUÑOZ-NOYA**
33 Calle Bolivia, Suite 500
San Juan, Puerto Rico 00917
Tel.: 787-756-7880
Fax: 787-753-6580

***Attorneys for Petitioner/Cross-Respondent***

4903-4648-9295.5